## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

HENRY LANEHEART                                    CIVIL ACTION

VERSUS                                             NO. 11-3197

WARDEN HOWARD PRINCE                               SECTION "A"(5)
ELAYN HUNT CORRECTIONAL CENTER

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). IT IS HEREBY RECOMMENDED that the instant petition be **DISMISSED WITH PREJUDICE.**

I.   STATE COURT PROCEDURAL BACKGROUND

The petitioner, Henry Laneheart, is currently housed in the Elayn Hunt Correctional Center in St. Gabriel, Louisiana.[1] Laneheart, along with co-defendant Torey Gillard,[2] was charged by bill of information in Orleans Parish on April 22, 1997, with armed

---

[1]Rec. Doc. No. 3.

[2]Gillard is not a party to the instant proceeding.

robbery.[3]   The Louisiana Fourth Circuit Court of Appeal summarized
the facts of the case as follows:

> At trial, Officer Kevin Thomas testified he
> investigated a robbery that occurred on March 5, 1997, at
> 400 North Villere Street.   Bobby Soniat, the victim,
> reported that three men were involved in the robbery; he
> gave the names of two of the men-Henry Laneheart and Chad
> Laneheart-and also gave the officer their address.
> Soniat stated he did not know the third man.   Officer
> Thomas was able to arrest Henry Laneheart several hours
> after the incident when he found Laneheart in front of
> his apartment.   Laneheart was wearing the O'Henry's
> uniform the officer had learned that Laneheart was
> wearing the night before.   Laneheart was transported back
> to South Claiborne Avenue and Toledano Street where
> Soniat identified him as one of the men who robbed him.
> Detective Anthony Caprerra testified that he
> obtained a search warrant for the car driven by Henry
> Laneheart the night of the robbery.   When he searched the
> vehicle, he found a paycheck for Henry Laneheart from
> O'Henry's Restaurant and several other documents
> belonging to Laneheart.
> Bobby Soniat, the twenty-three-year-old kitchen
> manager for O'Henry's Restaurant, testified that he has
> known Henry Laneheart for about five years since they
> both began working at O'Henry's.   Soniat said that on
> March 5, 1997, Laneheart came to work about 6:00 p.m. and
> was scheduled to work until midnight; however, Soniat
> sent him home about 7:00 p.m. because Laneheart seemed to
> be intoxicated and was boisterously complaining that his
> paycheck was not correct.   Soniat said he could do
> nothing about the check and Laneheart knew that.
> However, as Laneheart was leaving he said, "I'm going to
> get all you player haters."   Soniat observed Laneheart
> leaving in his two-toned Bronco truck.
> Soniat received his paycheck that day also, and he
> put $100 in the bank and kept $400 to pay his bills.
> Leaving work about midnight that evening, he drove home
> a co-worker who lived in the Magnolia Project.   There,
> Soniat saw Laneheart with two other men who were all
> getting into Laneheart's Bronco truck; Laneheart was
> getting into the driver's seat.   After dropping off his
> co-worker, Soniat drove to Claiborne Avenue toward his

_____

[3]St. Rec. Vol. 1 of 7, Bill of Information.

2

home.   As he approached a traffic light at Jackson and Claiborne Avenues, Soniat noticed Laneheart's vehicle in the lane next to him.

Soniat drove to his house at North Villere Street. When he got out of his car, he saw a man, later identified as Torey Gillard, standing right in front of him and holding a gun.  The man said, "Give it up," and "I know you got it."  The robber was wearing a bandana over his face, but it fell down so that Soniat had a clear view of the robber's face.  The robber had on jeans and a white shirt.  Soniat handed over about $460, his I.D., an ATM card, and a health insurance card.  A second man with a hood over his face came up during the robbery and told Soniat to take off his shoes.  (Soniat testified that he kept money in his shoes and that Laneheart knew it).  Soniat called him "Chad," but the man did not respond.  Soniat explained that he thought the man was Chad Laneheart because when he was taking his co-worker home, he noticed Henry Laneheart getting into the Bronco with a man he assumed was Henry's brother, Chad.  After Soniat surrendered his shoes, the two men hurried through a breezeway.  Soniat followed and saw that they were getting into a Bronco.  The man with the gun turned around and shot at Soniat.

After they left, Soniat returned to his home and told his girlfriend what had happened, and she called the police.  Soniat gave the police the names of Chad and Henry Laneheart.  Soniat could not give the name of the gunman, but he recognized him from the neighborhood because he had seen Gillard with Henry Laneheart on occasion.  Soniat went with the police officers to a Winn Dixie parking lot where he identified Henry Laneheart as the driver of the Bronco and Chad Laneheart as his accomplice.  A few days later, Soniat told the police that Chad Laneheart was not involved in the robbery.  He said that a day or two after the incident, he was in the Magnolia Project when he saw a man sitting on a porch who had on the exact clothes as the man Soniat had thought was Chad.  Soniat stopped, and when the man noticed him, the man ran up the steps.  That man's name is "Keyward," and he was not arrested in connection with the offense.  Soniat also found out the name of the gunman and gave it to the police.  Later Soniat identified Torey Gillard's picture in a photographic line up.  When asked how he came up with Gillard's name, Soniat said that Mrs. Laneheart, the mother of Henry and Chad, had given it to him.  She had been questioning neighbors about Chad's whereabouts on the night of the robbery.  She telephoned

3

> Soniat to tell him that "Torey" had been the gunman. Soniat gave the police that name, and later he remembered the last name was "Gillard."
>     Genevia Katrina Coleman, Gillard's girlfriend, testified that she knew Henry Laneheart as a friend of Gillard.

State v. Laneheart, 778 So.2d 1217, 1219-1220(La. App. 4th Cir. 2001); State Record Volume 3 of 7, Louisiana Fourth Circuit Court of Appeal Opinion, 2000-KA-0723, pages 1-4, January 31, 2001.

Laneheart was tried before a jury on March 16, 1998, and was found guilty as charged.[4]  On March 20, 1998, Laneheart was sentenced to 20 years incarceration with credit for time served.[5] The State filed a multiple bill of information charging Laneheart as a second-felony offender.  On December 11, 1998, Laneheart pleaded guilty to the multiple bill.[6]  On that same date, the district court vacated its original sentence and sentenced Laneheart as a second-felony offender to 49 and 1/2 years imprisonment with credit for time served.[7]

On January 31, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed Laneheart's conviction and sentence.[8]  On January 11, 2002, the Louisiana Supreme Court denied Laneheart's writ

---

[4]St. Rec. Vol. 3 of 7, Trial Transcript, p. 108.

[5]St. Rec. Vol. 3 of 7, Sentencing Transcript, p. 3.

[6]St. Rec. Vol. 3 of 7, Multiple Bill Hearing, p. 4-5.

[7]St. Rec. Vol. 3 of 7, Multiple Bill Hearing, p. 10.

[8]State v. Laneheart, 778 So.2d at 1222; St. Rec. Vol. 3 of 7, 4th Cir. Opinion, p. 8, 2000-KA-0723, 1/31/01.

4

application without opinion.  State v. Laneheart, 807 So.2d. 228 (La. 2002); State Record Volume 3 of 7, Louisiana Supreme Court Opinion, 2001-KO-0777, January 11, 2002.

Laneheart's conviction became final 90 days later, on April 11, 2002, when he did not file a writ application with the United States Supreme Court.  Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir.2003) (citing 28 U.S.C. §2244(d)(1)(A); Flanagan v. Johnson, 154 F.3d 196, 200-01 (5th Cir.1998)); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir.1999) (citing 28 U.S.C. §2244(d)(1)(A)); U.S. Sup.Ct. R. 13(1).

On March 11, 2002, prior to the finality of his conviction, Laneheart filed an application for post-conviction relief with the state trial court.[9]  In a letter dated March 11, 2004, the trial judge's law clerk mistakenly informed Laneheart that his "application was not timely filed and will not be considered."[10] On March 18, 2004, Laneheart filed with the district court a motion to reinstate his post-conviction application, arguing that his post-conviction application was not time-barred.[11]  Laneheart's post-conviction application was reinstated and on October 28, 2004,

---

[9]St. Rec. Vol. 1 of 7, Application and Writ for Post-Conviction Relief.

[10]St. Rec. Vol. 1 of 7, Letter dated March 11, 2004.

[11]St. Rec. Vol. 1 of 7, Motion to Reinstate.

was denied.[12]  Laneheart, however, on June 23, 2005, filed a writ
of mandamus requesting that the Orleans Parish Clerk of Court be
ordered to "issue the ruling of the District Court, if, such [a]
ruling has been rendered . . . ."[13]  In a letter dated July 1, 2005,
the trial judge's law clerk enclosed a copy of the docket master
entry reflecting that Laneheart's application for post-conviction
relief had been "considered and denied by the court on October 28,
2004."[14]  On July 18, 2005, Laneheart filed a writ application with
the Louisiana Fourth Circuit seeking relief from the district
court's denial of post-conviction relief.[15]  On December 2, 2005,
the Louisiana Fourth Circuit denied Laneheart's writ application,
stating: "Relator has failed to demonstrate that he is entitled to
relief; accordingly, the trial court did not err in denying
realtor's [sic] application for post-conviction relief as untimely
filed."[16]  On December 16, 2005,[17] Laneheart filed a writ application

---

[12]The trial court's denial is evidenced only by an entry on the
docket master reflecting: "COURT DENIED POST CONVICTION RELIEF."
St. Rec. Vol. 1 of 7, Docket Master Entry, 10/28/04, p. 4.

[13]St. Rec. Vol. 1 of 7, Writ of Mandamus, p. 3.

[14]St. Rec. Vol. 1 of 7, Letter dated July 1, 2005.

[15]St. Rec. Vol. 4 of 7, Writ of Supervisory Review from Denial
of Post-Conviction Relief, No. 2005-K-1165.

[16]State v. Laneheart, No. 2005-K-1165 (La. App. 4th Cir.
12/02/05); St. Rec. Vol. 4 of 7.

[17]December 16, 2005 represents the post-mark date stamped on
a copy of the envelope in which Laneheart's writ application was
enclosed.

with the Louisiana Supreme Court.[18]   On September 22, 2006, the Louisiana Supreme Court denied Laneheart's writ application without opinion.[19]

On May 5, 2009, Laneheart filed with the district court a motion for appropriate relief challenging the court's determination, as relayed in a March 11, 2004 letter, that Laneheart's post-conviction application was untimely.[20]  On May 12, 2009, the district court denied Laneheart's motion.[21]   On June 9, 2009, Laneheart filed with the Louisiana Fourth Circuit an application for supervisory and/or writ of review in connection with the denial of his motion for appropriate relief.[22]  On July 14, 2009, the Louisiana Fourth Circuit denied Laneheart's writ application.   The court acknowledged that Laneheart's original post-conviction application was "timely filed."  The court further acknowledged that it was unclear whether the district court ever considered the merits of Laneheart's post-conviction application.

---

[18]St. Rec. Vol. 4 of 7, Writ of Supervisory Review from the Denial of Post-Conviction Relief, No. 2006-KH-0679.

[19]State ex rel. Laneheart v. State, 937 So.2d 383 (La. 2006); St. Rec. Vol. 4 of 7, No. 2006-KH-0679.

[20]St. Rec. Vol. 1 of 7, Motion for Appropriate Relief.  May 5, 2009 represents the file-stamped date.  Incongruously, Laneheart's pleading is dated August 27, 2009.

[21]St. Rec. Vol. 1 of 7, Docket Master Entry, 5/12/09, p. 5.

[22]St. Rec. Vol. 5 of 7, Application for Supervisory and/or Writ of Review, No. 2009-K-0799.

The court, however, noted that it had considered the merits in writ 2005-K-1165, finding that Laneheart was not entitled to post-conviction relief.  As such, the court determined that "there was no basis to reverse the district court's May 12, 2009 ruling...."[23] On June 18, 2010, the Louisiana Supreme Court denied Laneheart's writ application without opinion.[24]

On May 5, 2010, while his writ application was still pending before the state supreme court, Laneheart filed with the state district court a motion to correct an illegally lenient sentence.[25] Having received no ruling from the state district court, Laneheart, on or about August 12, 2010, filed a writ of mandamus with the Louisiana Fourth Circuit.[26]  On August 20, 2010, the Louisiana Fourth Circuit denied Laneheart's writ application.[27]  Laneheart did not seek relief from the Louisiana Supreme Court.

On October 19, 2010, Laneheart filed a second post-conviction application with the state district court which the court denied on

---

[23]State v. Laneheart, No. 2009-K-0799 (La. App. 4th Cir. 7/14/09); St. Rec. Vol. 5 of 7.

[24]State ex rel. Laneheart v. State, 38 So.3d 316 (La. 2010); St. Rec. Vol. 5 of 7, No. 2009-KH-1865.

[25]St. Rec. Vol. 6 of 7, Motion to Correct Illegally Lenient Sentence.

[26]St. Rec. Vol. 6 of 7, Application for Writ of Mandamus, No. 2010-K-1153.  The filing date is unclear because Laneheart did not date his writ of mandamus.

[27]State v. Laneheart, No. 2010-K-1153 (La. App. 4th Cir. 8/20/10); St. Rec. Vol. 6 of 7.

8

November 30, 2010.[28]  On January 28, 2011, the Louisiana Fourth
Circuit denied Laneheart's writ application, stating:  "The claims
asserted in relator's application for post-conviction relief are
the same claims reviewed in writ 2010-K-1153.  The claims are
repetitive.  There is no error in the district court's November 30,
2010 judgment."[29]  On December 2, 2011, the Louisiana Supreme Court
denied Laneheart's writ application without opinion.[30]

II.   <u>FEDERAL HABEAS PETITION</u>

      On February 2, 2012, the clerk of this court filed Laneheart's
petition for federal habeas corpus relief in which he alleges:
(1)He received ineffective assistance of counsel. (2) There was
insufficient evidence to support his conviction.[31]  The State filed
a response, arguing that Laneheart's petition was not timely filed
under federal law.[32]  The State urges that the petition must be
dismissed as untimely.

III. <u>GENERAL STANDARDS OF REVIEW</u>

      The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively

---

[28]St. Rec. Vol. 1 of 7; Docket Master Entry, 11/30/10, p. 5.

[29]St. Rec. Vol. 7 of 7, <u>State v. Laneheart</u>, No. 2010-K-1785
(La. App. 4th Cir. 1/28/11).

[30]<u>State ex rel. Laneheart v. State</u>, 76 So.3d 1171 (La. 2011);
St. Rec. Vol. 7 of 7, No. 2011-KH-0397 (12/2/11).

[31]Rec. Doc. Nos. 3 and 6.

[32]Rec. Doc. No. 17.

revised federal habeas corpus legislation, including 28 U.S.C. §2254. The AEDPA went into effect on April 24, 1996[33] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Laneheart's petition, which, for reasons discussed below, is deemed filed in this federal court on December 22, 2011.[34]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court

---

[33]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[34]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for statute of limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Laneheart's petition was filed by the clerk of this court on February 2, 2012, when the court's filing requirements had been satisfied. Laneheart's signature on the petition was dated December 22, 2011. This is the earliest date appearing in the record on which he could have delivered his pleadings to prison officials for mailing. The fact that he did not satisfy filing requirements until over a month later does not alter the application of the federal mailbox rule to his pro se petition.

remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. §2254(b),(c)).

The Court finds that Laneheart's federal petition is untimely and should be dismissed for that reason.  However, the Court's finding is not based upon the argument presented by the State.

IV.  <u>STATUTE OF LIMITATIONS</u>

The AEDPA requires a petitioner to bring his §2254 petition within one year of the date his conviction became final.[35]  <u>Duncan v. Walker</u>, 533 U.S. 167, 179-80 (2001).  Laneheart's conviction became final on April 11, 2002, when he did not file a writ application with the United States Supreme Court.  Thus, under a literal application of the statute, Laneheart had until April 11, 2003, to file his federal habeas petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled, but only when the petitioner has pursued his rights diligently and rare or extraordinary

---

[35]The statute of limitations provision of the AEDPA sets forth other triggers for the running of prescription.  None of the other triggers are applicable in this case.

11

circumstances exist which prevented timely filing.  <u>Pace v. DiGuglielmo</u>, 544 U.S. 408, 418 (2005); <u>Fisher v. Johnson</u>, 174 F.3d 710, 713 (5th Cir. 1999), <u>cert. denied</u>, 531 U.S. 1164 (2001); <u>Cantu-Tzin v. Johnson</u>, 162 F.3d 295, 299 (5th Cir. 1998); <u>Davis v. Johnson</u>, 158 F.3d 806, 810 (5th Cir. 1998), <u>cert. denied</u>, 526 U.S. 1074 (1999).  Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights.  <u>Pace</u>, 544 U.S. at 418-19; <u>Cousin v. Lensing</u>, 310 F.3d 843, 848 (5th Cir. 2002).

The State argues that Laneheart's statute of limitations commenced to run on November 27, 2004, 30 days after October 28, 2004, when the district court denied him post-conviction relief and he failed to timely file a writ application with the state appellate court.[36]  However, the apparent reason Laneheart did not timely seek relief is because he did not receive notice of the district court's decision.  On June 23, 2005, Laneheart filed a writ of mandamus seeking the district court to order the clerk of court to send him a copy of the district court's ruling.  It was not until July 1, 2005, that Laneheart, via a letter, was informed that his post-conviction application had been considered and denied.  Shortly thereafter, on July 18, 2005, Laneheart sought relief from the Louisiana Fourth Circuit.

---

[36]Rec. Doc. No. 17, p. 7.

The Court finds that the fact that Laneheart was not informed until July 1, 2005 of the district court's October 28, 2004 decision warrants equitable tolling.  See Hardy v. Quarterman, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a state-created delay when the state appeals court failed to inform him that his state habeas petition had been denied.)  Thus, the State's untimeliness argument, based upon the claim that prescription commenced to run on November 27, 2004, is without merit.

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. §2244(d)(2).  Laneheart argues that the instant action is timely pursuant to the above provision because he had a properly filed post-conviction proceeding pending from March, 2002, when he filed his first post-conviction application which the district court erroneously denied as untimely, until July 14, 2009, when the Louisiana Fourth Circuit "reversed" the district court's erroneous finding of untimeliness.[37]

---

[37]Rec. Doc. No. 18, p. 3

On July 14, 2009, in writ application no. 2009-K-0799, the Louisiana Fourth Circuit acknowledged that Laneheart's post-conviction application was timely.  However, the Fourth Circuit's acknowledgment did not constitute a "reversal" of the district court's untimeliness finding, thereby linking the two decisions for tolling purposes.  Instead, the district court's untimeliness decision is linked to the Louisiana Fourth Circuit's December 2, 2005 decision in writ application no. 2005-K-1165.   In the pertinent opinion, the Fourth Circuit found that Laneheart had failed to demonstrate he was entitled to relief and, as such, the trial court's decision, arising from Laneheart's March, 2002 post-conviction application, was not in error.[38]  Thereafter, Laneheart sought relief from the Louisiana Supreme Court and, on September 22, 2006, in writ application no. 2006-KH-0679, the state supreme court denied relief and prescription commenced to run the following day, expiring September 23, 2007.[39] Laneheart had no properly filed state post-conviction or other collateral review proceedings of any kind pending in any state court during the period from September 23, 2006 to September 23, 2007.  His first such pleading is deemed to have been submitted to the state district court on May 5, 2009, long after his statute of limitations had expired.  A filing made after the AEDPA filing period has expired does not afford a petitioner any tolling.  See Scott v. Johnson, 227 F.3d 260, 263

---

[38]See discussion supra at p. 6.

[39]See discussion supra at pp. 6-7.

(5th Cir. 2000); see also Lookingbill v. Cochrell, 293 F.3d 256, 265 (5th Cir. 2002) (missing the AEDPA limitations deadline by even a few days nevertheless renders a federal petition untimely.) Laneheart's federal habeas petition deemed filed on December 22, 2011, is therefore time-barred and must be dismissed for that reason.

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that the petition of Henry Laneheart for issuance of a writ of habeas corpus under 28 U.S.C. §2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415,

1430 (5th Cir. 1996)(en banc).[40]

New Orleans, Louisiana, this 11th day of _____April_____, 2013.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[40]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.

16